# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**MICHAEL DENIS CARON,**

                **Plaintiff,**

**v.**                                                                **Case No:  6:15-cv-1882-Orl-22DCI**

**COMMISSIONER OF SOCIAL
SECURITY,**

                **Defendant.**

_____

## REPORT AND RECOMMENDATION

Michael Denis Caron (Claimant) appeals to the District Court from a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for disability insurance benefits and supplemental security income benefits.  Doc. 1; R. 185–202.  Claimant argues that the Administrative Law Judge (the ALJ) erred by: 1) failing to apply the correct legal standards to the opinion of Gregory G. White, M.D. (Dr. White); and 2) failing to apply the correct legal standards to Claimant's testimony regarding his pain and limitations.  Doc. 18 at 2.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

## I.      STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)

and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560.  The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## II.    ANALYSIS.

### A.  Dr. White.

Claimant argued that the ALJ erred by failing to weigh, or even mention, Dr. White's opinion.  Doc. 18 at 7–9.  Specifically, Claimant argued that the ALJ's "failure to discuss the pertinent elements of Dr. White's opinion suggests that those elements were not considered."  *Id.* at 9 (citation and internal quotations omitted).  Conversely, the Commissioner argued that the ALJ properly considered Dr. White's opinion, and in the alternative, that any purported failure to do so was harmless error.  Dc. 19 at 5–11.

At step four of the sequential evaluation process, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to perform past relevant work.  *Phillips*, 357 F.3d at 1238. "The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The ALJ is responsible for determining the claimant's RFC.  20

C.F.R. § 404.1546(c). In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining, and non-examining medical sources. 20 C.F.R. § 404.1545(a)(1), (3); *Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012).

The weighing of treating, examining, and non-examining physicians' opinions is an integral part of steps four and five of the sequential evaluation process. In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176 (11th Cir. 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id.* at 1178-79 (citing 20 C.F.R. § 404.1527(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* at 1179 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981)).

On November 18, 2016, Claimant presented to Dr. White for a second opinion and evaluation of his bilateral avascular necrosis of the hips. R. 444–46. Dr. White performed an examination of Claimant that revealed limited range of motion in Claimant's hip, but essentially full extension in Claimant's left knee. R. 445. Further, as part of his examination, Dr. White reviewed x-rays that were taken at Bert Fish Medical Center on October 16, 2013. R. 445. Dr. White stated that these x-rays were consistent with Ficat III-IV avascular necrosis of the femoral head. *Id.* His impression was that Claimant was suffering from end-stage avascular necrosis of the bilateral hips, and any attempts to minimize Claimant's degenerative changes would be

"fruitless." R. 443, 445.  Dr. White advised Claimant that he was a reasonable candidate for a hip arthroplasty, but recommended that Claimant instead undergo a hip resurfacing procedure given Claimant's age.  *Id*.  Dr. White suggested that Claimant "utilize a walker to unload his hips" and prescribed Relafen, a narcotic pain medication, to be taken at bedtime.  R. 445–46.  Dr. White provided no opinions regarding what Claimant could or could not do as a result of his avascular necrosis.  R. 443–46.

To the extent Claimant is arguing that the ALJ erred by failing to discuss all relevant evidence in Dr. White's records, Claimant's argument is without merit.  At step two of the sequential evaluation process, the ALJ found that Claimant "has the following severe impairments: avascular necrosis in the hips; asthma; chronic obstructive pulmonary disease (COPD); hypercholesterolemia; and gastroesophageal reflux disease (GERD)."  R. 14.  At step four, the ALJ discussed Claimant's limited range of motion, the October 16, 2013 x-ray that was consistent with Ficat III-IV avascular necrosis of the femoral heads, and found that Claimant was limited to work that allows for use of a cane to ambulate.  R. 14–17.  In fact, the ALJ specifically cited to Dr. White's medical records when discussing the October 2013 x-rays.  R. 14.

Given that the ALJ cited to Dr. White's records and that the ALJ's findings regarding Claimant's objective medical condition were consistent with Dr. White's records, the undersigned finds that the ALJ considered the relevant evidence in Dr. White's records and that substantial evidence supported the ALJ's findings of fact with regard to Claimant's objective medical condition.  Moreover, even if the undersigned found that the ALJ had failed to consider the relevant evidence in Dr. White's records, the error was harmless.  Dr. White's records were entirely

consistent with the ALJ's findings of fact with regard to Claimant's objective medical condition.[1] R. 14-17, 443-46.

To the extent Claimant is arguing that the ALJ erred by failing to consider and weigh Dr. White's opinions, Claimant's argument is without merit. Claimant appears to take issue with the ALJ's failure to state with particularity the weight given to Dr. White's letter to Claimant's primary physician.[2] Doc. 18 at 8–9. Specifically, Claimant seems to be referring to Dr. White's "opinions" that Claimant would require a specialized program to treat his condition, that attempts to minimize degenerative changes would be fruitless, and that Claimant should undergo a hip resurfacing procedure, as well as Dr. White's suggestion that Claimant utilize a walker to "unload his hips."[3] *Id*. But these are not opinions that the ALJ must weigh because they are not statements reflecting Dr. White's judgment about the nature and severity of Claimant's impairment. *See* 20 C.F.R. § 404.1527(a)(2); *Tavarez v. Comm'r of Soc. Sec.*, 638 Fed. Appx. 814, 846 (11th Cir. 2016) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of the claimant's impairment."); *Winschel*, 631 F.3d at 1178-79. Rather, these statements simply discuss potential treatment options and the fact that Claimant's condition may worsen in

---

[1] Claimant did not discuss or explain how Dr. White's records were purportedly inconsistent with the ALJ's findings of fact. Doc. 18 at 7-9

[2] Claimant fails to specify what "opinion" it is that the ALJ purportedly failed to weigh. Doc. 18 at 8–9. Rather, Claimant simply summarizes the results of the physical examination performed by Dr. White and generally discusses a letter that Dr. White wrote to Claimant's primary physician. *Id*.

[3] Dr. White's suggestion that Claimant utilize a walker to "unload his hips" was not contained in Dr. White's letter to Claimant's primary care physician. Claimant only mentions Dr. White's suggestion that he use a walker while summarizing the results of the physical examination. Doc. 18 at 7-9. It is not clear from Claimant's argument whether or not Claimant considered Dr. White's suggestion to be an opinion that must be weighed. *Id*.

the future.  They contain no opinions regarding what Claimant can still do despite his impairments, and they do not identify specific physical or mental restrictions caused by his impairments.[4]

Further, even assuming the suggestion that Claimant utilize a walker to unload his hips was an opinion that needed to be weighed, Claimant's argument would still be without merit.  Any purported failure to weigh Dr. White's suggestion was harmless error because Dr. White's suggestion was consistent with the ALJ's RFC determination, which stated as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with no squatting, kneeling or climbing of ropes, scaffolding or ladders; only occasional balancing, stooping, crouching, crawling, and climbing of ramps and stairs.  The claimant must avoid exposure to concentrated cold temperature extremes, vibrations, fumes, gases, poorly ventilated areas, and hazards.  The claimant requires the use of a cane to ambulate and must be allowed to alternate between periods of sitting and standing throughout the day at his own time frame, and be able to perform his work from either position.

R. 14.[5]  Dr. White's suggestion does not directly contradict the ALJ's RFC determination, which considered that Claimant required the use of a cane to ambulate.[6]  *See, e.g.*, *Wright v. Barnhart*,

---

[4] Dr. White stated in records that he "suggested [to Claimant that] he utilize a walker to unload his hips."  R. 445.  The undersigned finds that this statement is not the same as a statement regarding a physical limitation.  The undersigned notes that Claimant's own testimony, taken more than a year after he saw Dr. White, was that he was using a cane to ambulate, not a walker.  R. 39.

[5] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a); 20 C.F.R. § 416.967(a).

[6] Claimant has presented no argument or citations to authority to indicate that Dr. White's suggestion that Claimant use a walker to "unload his hips" somehow contradicts the ALJ's RFC determination.  Nor has Claimant presented any argument or citations to authority to suggest that Claimant would be unable to perform the representative occupations identified in step five had the RFC determination required the use of a walker to ambulate.  Therefore, Claimant has waived the issue.  *See NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *see also See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th

153 F. App'x 678, 684 (11th Cir. 2005) (per curiam) (failure to weigh a medical opinion is harmless error if the opinion does not directly contradict the ALJ's RFC determination); *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (similar). Therefore, the ALJ's failure to explicitly weigh Dr. White's suggestion was harmless error.

For the foregoing reasons, it is **RECOMMENDED** that the Court reject Claimant's first assignment of error.

### B.  Credibility

Claimant argued that the ALJ's credibility finding was not supported by substantial evidence and not based on the correct legal standards because the ALJ purportedly overlooked portions of Claimant's testimony and failed to consider Dr. White's opinion, which purportedly supported Claimant's testimony.  Doc. 18 at 9-13.  However, Claimant did not identify with specificity what testimony the ALJ rejected that Claimant purports to have been rejected in error, and did not make any specific arguments to demonstrate that the reasons articulated by the ALJ were not supported by substantial evidence.  *Id.*   In response, the Commissioner argued that the ALJ's credibility finding was supported by substantial evidence.  Doc. 19 at 11-15.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

---

Cir. 2004) (per curiam) (refusing to consider an argument that the claimant failed to raise before the district court).  Moreover, as noted above, Claimant's own testimony, taken more than a year after he saw Dr. White, was that he was using a cane to ambulate, not a walker.  R. 39.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).  If the ALJ determines the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.  20 C.F.R. § 404.1529(c)(1).  In doing so, the ALJ considers a variety of evidence, including, but not limited to, the claimant's history, the medical signs and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work.  *Id.* at § 404.1529(c)(1)-(3).  "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561-62.  The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence.  *Foote*, 67 F.3d at 1562.

On December 9, 2014, Claimant and his representative appeared before the ALJ for a hearing.  R. 27-47.  At the hearing, Claimant gave testimony regarding his purported pain and functional limitations.  *Id.*  Specifically, Claimant testified that one of his hips was in constant pain and that the other hip "actually binds up."  R. 34.  He testified that he could not sit on a chair for longer than an hour-and-a-half and that he has difficulty getting out of some chairs.  *Id.*  Claimant testified that he could not stand or walk for more than ten to fifteen minutes and that he could carry twenty pounds from his car to his house, but that doing so was "very strenuous" and "takes the wind out of [him]."  R. 34-35, 39-40.  Claimant testified that he was using a cane to ambulate, but that he could walk without the assistance of a cane for five to ten minutes.  R. 39-40.  Lastly, Claimant testified that he had trouble sleeping and that he would "try to take little naps here and there" because he was constantly tired.  R. 40-41.

Claimant also testified at the hearing regarding his daily activities.  R. 27-47.  Specifically, he testified that he would "help out" with the laundry, cooking, and cleaning for about a half-hour before needing to sit down.  R. 35.  Claimant testified that he was able to carry a basket of laundry and that he drove once or twice per week to go to the grocery store.  *Id*.  Claimant further testified that he did "a lot" of reading on and off throughout the day.  R. 36.  He testified that he would sit at the computer for an "hour or so" before he had to get up to stretch and walk around.  *Id*.

At step four of the sequential evaluation process, the ALJ found that Claimant's impairments could reasonably be expected to cause the alleged symptoms and that Claimant's testimony about the intensity, persistence, and limiting effects of the symptoms was generally credible.  R. 15-16.  The ALJ found the following testimony credible and accounted for same in the RFC determination: (1) Claimant could only carry up to twenty pounds and doing so would result in fatigue; (2) Claimant required a cane for ambulation; (3) Claimant was limited in his abilities to sit, stand, and walk; and (4) Claimant was unable to kneel or squat.  R. 14–17.

However, the ALJ did not find credible Claimant's conclusory testimony that he was unable to perform any work.  R. 14-17.  In support of this credibility finding, the ALJ referred to both the medical evidence and Claimant's own testimony regarding his daily activities.  *Id*.  Specifically, the ALJ noted that Claimant's own testimony was as follows: (1) Claimant could carry up to twenty pounds, but doing so would result in fatigue; (2) Claimant could sit for up to an hour before having to stand up to move around, at which time he was capable of performing other tasks; (3) Claimant could drive, perform household chores, and go grocery shopping for short periods; and (4) Claimant could ambulate with the help of a cane.  *Id*.

The ALJ also noted the following medical opinions regarding Claimant's ability to function: (1) Alvan Barber, M.D.'s (Dr. Barber) conclusion that Claimant's grip, and upper and

lower extremity strength was "5/5;" (2) Dr. Barber's conclusion that Claimant was able to sit without difficulty; and (3) various medical records indicating that Claimant could occasionally balance, stoop, crouch, crawl, and climb ramps and stairs.  R. 14-17, 73, 307-12, 360-61, 364, 389-91, 394, 418.

Claimant argued that Claimant's testimony supported more severe limitations than the ALJ accounted for in the RFC determination.  Doc. 18 at 9-13.  Specifically, it appears that Claimant was arguing that the ALJ failed to consider and find credible Claimant's purported need to "walk at-will."  Doc. 18 at 11.  However, the undersigned disagrees with Claimant's interpretation of his testimony as requiring that Claimant be allowed to walk at-will.  Claimant's testimony was that while he was sitting down at his computer, his "hips [would] start to bind so [he'll] get up for a little bit and kind of walk around the house."  R. 36.  This testimony does not indicate a need to walk at-will.  The ALJ noted in her decision that Claimant would need "to get up and move about" after sitting at the computer for up to one-hour when determining that Claimant could perform work that allowed him to alternate between sitting and standing.  R. 16.  As such, the undersigned finds that the ALJ properly considered and found credible Claimant's testimony regarding his need "to get up and move about."

In addition, Claimant argued that the ALJ overlooked Claimant's testimony that he could only help with household chores for up to a half-hour before sitting down.  Doc. 18 at 11-12.  This argument is not supported by the record.  The ALJ specifically referred to the fact that Claimant could only perform household chores for up to thirty minutes at one time.  R. 15.  Further, contrary to Claimant's implication that the ALJ disqualified Claimant solely because Claimant was able to perform household chores for short periods, the ALJ did not rely solely upon Claimant's ability to assist in household chores to disqualify Claimant from disability.  R. 16.  Rather, the ALJ

determined that Claimant's testimony as a whole, together with the relevant medical records, supported the ALJ's finding that Claimant was capable of sedentary work with additional restrictions.  R. 16.  Claimant offered no specific argument to demonstrate that this finding was not supported by substantial evidence.  Doc. 18 at 9-13.

Lastly, Claimant's argument that the ALJ failed to consider all of Dr. White's opinions and thus failed to apply the correct legal standards to Claimant's testimony is unavailing.  Doc. 18 at 12-13.  The undersigned finds this argument unavailing for the same reasons the undersigned recommended the Court reject Claimant's argument challenging the ALJ's failure to weigh all of Dr. White's opinions.  Further, the undersigned notes that Claimant offered no specific argument to demonstrate how Dr. White's opinion was inconsistent with the ALJ's credibility finding. Rather, Claimant merely states that Dr. White's opinion supported Mr. Caron's testimony, without identifying what testimony Dr. White's opinion purportedly supported.

For the foregoing reasons, the undersigned finds that the ALJ articulated specific and adequate reasons, which are supported by substantial evidence, in support of the credibility finding.  Accordingly, it is **RECOMMENDED** that the Court reject Claimant's second assignment of error.  *See Foote*, 67 F.3d at 1561-62 (the court will not disturb a credibility finding that is supported by substantial evidence).

III.   **CONCLUSION.**

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.   **AFFIRM** the final decision of the Commissioner; and

2.   Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant, and close the case.

**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 5, 2017.


DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy